# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WATSON, | Case No. EDCV 07-1502-JTL |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | |
| Defendant. | |

## PROCEEDINGS

On December 1, 2007, Brain Watson ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his applications for Disability Insurance Benefits and Supplemental Security Income benefits. On December 18, 2007, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. On March 27, 2008, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on July 7, 2008, defendant filed an Answer to the Complaint. On August 15, 2008, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

## BACKGROUND

On January 4, 2005, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits alleging a disability onset date of August 4, 2004, due to a history of injuries to his back.[1]  (See Administrative Record ["AR"] at 12).  The Commissioner denied plaintiff's applications for benefits both initially and upon reconsideration. (AR at 23, 24, 37-42, 44-48).  Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at 36).

On December 4, 2006, the ALJ conducted a hearing in San Bernardino, California. (See AR at 224-243).  Plaintiff appeared at the hearing with counsel and testified.  (AR at 227-34, 240, 241-42).  Clifford Watson, plaintiff's father, appeared at the hearing and testified as a witness. (AR at 234-40).  Sandra Floretti, a vocational expert, also testified at the hearing.  (AR at 240-42).  The ALJ then kept the record open for two weeks after the hearing to allow plaintiff to submit additional medical records from a pain management specialist at Loma Linda that plaintiff had recently begun seeing.  (AR at 237-38, 242).  Plaintiff did not provide any further medical records to the ALJ, nor did he request additional time to do so.  (AR at 12).

On April 17, 2007, the ALJ issued his decision denying benefits to plaintiff.  (AR at 12-22).  The ALJ determined that plaintiff had the following medically determinable impairments: a history of early degenerative disease of the lumbosacral spine, a history of arthritic changes of the cervical spine and gastritis/gastrointestinal reflux disease.  (AR at 15).  The ALJ determined that these impairments, when considered in combination, were severe.  (Id.).  The ALJ determined that plaintiff's conditions did not meet or equal any of the impairments listed in Appendix 1 of the regulations.  (AR at 15-16).  The ALJ discredited plaintiff's allegations of disabling pain and concluded that plaintiff retained the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours out of eight hours, and sit for six hours in an eight-hour workday with no other limitations.  (AR at 16-

---

[1] Plaintiff had previously filed an application for Supplemental Security Income on October 1, 1998.  That application was denied and plaintiff did not appeal.  Instead, plaintiff worked and performed substantial gainful activity until 2004.  (See AR at 12).

2

21).  The ALJ concluded that plaintiff is capable of performing his past relevant work as a security guard and a kitchen aide (cook's helper).  (AR at 21-22).  Accordingly, the ALJ concluded that plaintiff was not disabled from August 4, 2004, plaintiff's alleged onset date, through April 17, 2007, the date of the decision.  (AR at 22).  The Appeals Council denied plaintiff's timely request for review of the ALJ's decision.  (AR at 4-6).

Thereafter, plaintiff appealed to the United States District Court.

## PLAINTIFF'S CONTENTIONS

Plaintiff makes the following claims:

1. The ALJ failed to properly consider the testimony of Clifford Watson, plaintiff's father.

2. The ALJ failed to meet his duty to develop the record regarding plaintiff's mental impairment.

3. The ALJ failed to rate plaintiff's mental functional limitations.

4. The ALJ failed to present a complete hypothetical to the vocational expert.

## STANDARD OF REVIEW

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  Where evidence is susceptible to more than one rational

interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

## DISCUSSION

### A. The Sequential Evaluation

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantially gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 141 (1987). Second, the ALJ must determine whether the claimant has a severe impairment. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant

may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.    Lay Witness Testimony of Clifford Watson, Plaintiff's Father**

Plaintiff alleges that the ALJ improperly disregarded the testimony of Clifford Watson, plaintiff's father. (Joint Stipulation at 3-4).

A social security claimant may provide evidence from other sources to show the severity of his or her impairment and how the impairment affects his or her ability to work. 20 C.F.R. § 404.1513(d). Other sources include, but are not limited to, nurse-practitioners, physicians' assistants, therapists, educational personnel, social welfare agency personnel, relatives, friends and clergy. Id. Plaintiff's father is properly categorized as an "other source" and the ALJ may consider his opinion regarding the severity of plaintiff's impairment and how it affects his ability to work. See 20 C.F.R. § 404.1513(d). An ALJ may reject the testimony of an "other source" by providing reasons germane to that witness. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

An ALJ must consider the testimony of a competent lay witness - a person who is in a position to observe a claimant regularly and testifies regarding the claimant's symptoms and ability to work. Dodrill, 12 F.3d at 919. However, an ALJ need not meet the impossible burden of mentioning every piece of evidence presented in his or her decision. Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Orcutt v. Barnhart, 2005 U.S. Dist. LEXIS 39731, at *25 (C.D. Cal. Sept. 27, 2005). Silent disregard of competent lay witness testimony is harmless error if the Court can confidently conclude that no reasonable ALJ, when fully crediting the testimony at issue, could reach a different disability determination. Stout v. Comm'r, 454 F. 3d 1050, 1056 (9th Cir. 2006).

In the decision, the ALJ noted that plaintiff had submitted several letters from lay sources including former employers, co-workers and friends. (AR at 19-20). The ALJ noted that such testimony only reported plaintiff's behavior and was not signed under oath. (AR at 20). The ALJ stated that "[g]iven the lack of evidence of treatment, and given [plaintiff's] documented untruth regarding weight loss, I am not convinced that he has demonstrated the most that he

1  can do." (AR at 20). Accordingly, the ALJ concluded that the testimony did not convince the
2  ALJ that plaintiff was disabled. (AR at 20).

3  The ALJ then acknowledged the testimony of plaintiff's father in the following manner:

> [Plaintiff's] father, Clifford Watson, testified that he lives with [plaintiff], but he is a pastor and works in the office from 9:00 AM to 5:00 PM. He has observed his son and believes he is in pain. He testified that he has observed that his son has trouble breathing, cannot sit long, cannot stand long, and cannot pick anything up. According to this witness, [plaintiff] has "seen a lot of doctors" and he takes pain medication that causes weight loss. [Plaintiff's] father testified that the had lost 15-20 pounds. In about January 2005, the witness obtained medical insurance for [plaintiff]. The witness testified that he hopes that with medical treatment, his son will improve. [Plaintiff's] father also states that [plaintiff] appears tired. He also stated that [plaintiff] cannot work because he cannot pass the physical examination to be a security guard. According to this witness, [plaintiff] lays down "a lot," a couple of hours a day but not continuously. [Plaintiff's] father admitted that [plaintiff] teaches through the church at a men's home and at a recovery center. He teaches two studies a week and an additional study once a month; a study session lasts one and one-half hours.

(AR at 20; see also AR at 234-40). The ALJ did not provide any reasons for discrediting plaintiff's father's testimony. The error resulting from the ALJ's failure to provide germane reasons for rejecting Clifford Watson's testimony, however, is harmless. First, Watson's testimony regarding the severity of plaintiff's impairments, plaintiff's daily routine, and his functional capacity was vague and not particularly significant. Plaintiff's father testified that plaintiff cannot stand or sit "long," has "trouble breathing," cannot pick anything up and has to lay down for what "amounts to a couple of hours" a day. (AR at 235, 238). He noted that

plaintiff has "constant pain" that has gotten worse over the years, but did not specify where the pain was or how it affected plaintiff's ability to function. (See AR at 236). Second, plaintiff's father's testimony echoed plaintiff's own testimony, which was discredited by the ALJ.[2] Even if the ALJ fully credited plaintiff's father's testimony, the Court finds that no reasonable ALJ could have reached a different disability determination based solely on plaintiff's father's testimony. See Stout, 454 F.3d at 1056. Accordingly, the Court finds that any error resulting from the ALJ's failure to provide germane reasons for rejecting plaintiff's father's testimony is harmless and cannot serve as the basis for remand. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (a decision of the ALJ will not be reversed for errors that are harmless).

**C.     The ALJ's Duty to Develop the Record**

Plaintiff argues that the ALJ failed to meet his duty to develop the record with regard to plaintiff's alleged depression and mental impairment. (Joint Stipulation at 6-8). Plaintiff notes that at the hearing plaintiff testified that he had problems with depression and, as a result, had problems in social gatherings. (Joint Stipulation at 6; see AR at 232). Plaintiff argues that his testimony triggered the ALJ's duty to further develop the record. (Joint Stipulation at 6-7).

In general, it is the duty of the claimant to prove to the ALJ that he or she is disabled. 20 C.F.R. § 404.1512(a). Thus, a claimant must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on his or her ability to work. Id. The ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the claimant] get medical reports." 20 C.F.R. § 404.1512(d). The ALJ has the duty to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); see 20 C.F.R. §§ 404.1512(e), 416.912(e). The ALJ may discharge this duty in several ways, including

---

[2] In the decision, the ALJ cited to plaintiff's daily activities, the inconsistencies between plaintiff's complaints and the objective evidence, and plaintiff's treatment history in support of his decision to discredit plaintiff's subjective complaints and allegations of severe functional limitations. (AR at 16-18). The Court notes that plaintiff does not challenge the ALJ's decision to discredit plaintiff's subjective complaints.

subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. Tonapetyan, 242 F.3d at 1150. Finally, although the ALJ has a duty to develop the record, the burden of proving disability remains on the claimant. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.2005). Thus, it was plaintiff's duty to prove that he was disabled. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Instead, plaintiff seeks to improperly shift his burden to the ALJ.

In his decision, the ALJ noted that plaintiff had failed to establish that his alleged depression was a medically determinable impairment:

> [Plaintiff] testified that he is depressed and does not fit in with "the crowd." He sees counselors at church, but has not sought treatment form a medical doctor or a psychologist. A medically determinable impairment must be established by evidence from an acceptable source (20 CFR 404.1513 and 416.913). Absent such objective evidence, there is no medically determinable mental impairment.

(AR at 15).

In this case, the record was neither ambiguous nor inadequate. Quite simply, plaintiff failed to prove that he suffered from depression. Plaintiff did not provide any medical evidence of depression. Nor did he allege he suffered from depression, or any other mental impairment, in his applications for benefits. In fact, the record contains no allegations of depression prior to the hearing and plaintiff does not rely on any evidence apart from his brief testimony at the hearing. Moreover, none of the letters from plaintiff's former employers, co-workers, or friends say that plaintiff was suffering from depression. Plaintiff's father did not testify that plaintiff was suffering from depression or any other mental impairment. In sum, plaintiff failed to provide any medical evidence of his depression or establish that his depression affected his ability to do basic work activities. See 20 C.F.R. 404.1512(c) ("[The claimant] must provide medical evidence showing that [he or she has] an impairment(s) and how severe it is . . . [The claimant]

1 must provide evidence, without redaction, showing how [the] impairment(s) affects . . .
2 functioning . . . and any other information that we need to decide your claim."). Because
3 plaintiff never presented sufficient evidence of a mental impairment, the ALJ's duty to develop
4 the record was not triggered.

**D.     Rating Plaintiff's Mental Impairment**

Plaintiff argues that the ALJ failed to rate the degree of functional limitation resulting from plaintiff's mental impairment. (Joint Stipulation at 10). Plaintiff argues that the ALJ erred by failing to make a specific finding as to the degree of limitation in plaintiff's activities of daily living; social functioning; and concentration, persistence or pace pursuant to 20 C.F.R. Sections 404.1520a and 416.920a. The regulations that plaintiff cites to, however, only require an ALJ to rate the degree of a claimant's functional limitation if the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); see Maier v. Comm'r, 154 F.3d 913, 914 (9th Cir. 1998) (per curiam); Tagger v. Astrue, 536 F. Supp. 2d 1170, 1177 (C.D. Cal. 2008) ("First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment . . .") (emphasis added).

Here, plaintiff failed to establish that he suffered from a medically determinable mental impairment. (See supra Section C). Thus, the ALJ was not required to rate the degree of functional loss from plaintiff's alleged mental impairment and the ALJ did not err in failing to do so. See 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).

**E.     The ALJ's Hypothetical to the Vocational Expert**

Plaintiff argues that, at the hearing, the ALJ failed to present the vocational expert with a hypothetical that included all of plaintiff's limitations and restrictions. (Joint Stipulation at 11-13). Specifically, plaintiff argues that the ALJ did not include any limitations related to plaintiff's "depression and related mental impairments" or "set out factors bearing upon the degree and severity of the mental impairment." (Joint Stipulation at 12).

///

The ALJ made the disability determination at step four of the sequential analysis. (AR at 21-22). Plaintiff bore the burden of proving that he could no longer perform his past relevant work, consistent with the general rule that at all times, the burden is on the claimant to establish his entitlement to benefits. See Parra, 481 F.3d at 746. In order to proceed past step four, plaintiff had to prove that his impairments prevented him from doing his past relevant work. See Pinto, 249 F.3d at 844-45; Orteza v. Shalala, 50 F.3d 748, 750-51 (9th Cir. 1995). The ALJ's determination at step four requires a careful appraisal of the claimant's statements, the medical evidence, and, in some cases, corrobative information such as the Dictionary of Occupational Titles ("DOT"). Social Security Ruling ("SSR")[3] 82-62.

In the decision, the ALJ concluded that plaintiff retained the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours out of eight hours, and sit for six hours in an eight-hour workday with no other limitations. (AR at 16). At the hearing, the vocational expert testified that the occupation of security guard (DOT No. 372.667-034) is light[4] and semi-skilled and the occupation of kitchen aide (cook's helper) (DOT No. 317.687-010) is medium[5] and unskilled. (AR at 241, 242; see AR at 21-

---

[3] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[4] The DOT describes the duties and requirements of the numerous occupations that it chronicles and assigns each occupation a strength rating that represents the overall strength requirements that are considered to be important for average, successful work performance. The DOT defines light work as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work.

Dictionary of Occupational Titles, Fourth Edition, 1991, Appendix C.

[5] The DOT defines medium work as:

> Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10

22). The ALJ properly made findings regarding plaintiff's residual functional capacity and plaintiff's past relevant work and determined that plaintiff retained the residual functional capacity to perform his past relevant work as actually performed, and as generally performed. (AR at 22).

Moreover, a vocational expert's testimony constitutes substantial evidence if it is in response to a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations. Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995); Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). An alleged impairment is properly omitted from a hypothetical if the omission of the impairment is supported by substantial evidence in the record. Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (the hypothetical should be "accurate, detailed and supported by the medical record").

At the hearing, the ALJ asked the vocational expert to assume a hypothetical person the same age as plaintiff and with the same work history and education. The ALJ added that the hypothetical person is limited to lifting only 50 pounds occasionally and 25 pounds frequently, can stand and walk six hours of eight, can sit six hours of eight, can push and pull within the weight limits, and has no need for any assistive device for ambulation. (AR at 242). The vocational expert testified that such a hypothetical person could perform all of plaintiff's past relevant work. (Id.). The ALJ did not err in omitting plaintiff's alleged mental limitations from the hypothetical presented to the vocational expert because plaintiff failed to show he suffered from a medically determinable mental impairment or establish that he suffered from any limitations as a result of his alleged mental impairment. (See supra Section C). Thus, the hypothetical presented to the vocational expert was complete and supported by the medical record.

///

---

        pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.

Dictionary of Occupational Titles, Fourth Edition, 1991, Appendix C.

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards. The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: October 30, 2008

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE